HODGSON RUSS LLP
Carmine J. Castellano (*pro hac vice*)
Heidi J. Sorvino
1540 Broadway, 24th Floor
New York, New York  10036
Telephone:  (212) 751-4300
Facsimile:  (212) 751-0928
ccastellano@hodgsonruss.com
hsorvino@hodgsonruss.com

*Attorneys for Defendant*
*Tulley Automotive Group, Inc.*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CDK GLOBAL, LLC, as successor-in-interest to ADP DEALER SERVICES, INC.,<br><br>                      Plaintiff,<br><br>      -against-<br><br>TULLEY AUTOMOTIVE GROUP, INC. and JOHN DOE CORPORATIONS 1-5,<br><br>                   Defendants. | Civil Action No. 15-03103 (KM) (JBC)<br><br>**ANSWER AND COUNTERCLAIMS**<br><br>**DEMAND FOR JURY TRIAL** |

Defendant Tulley Automotive Group, Inc. ("Tulley Automotive"), by and through its undersigned counsel, for its Answer to the Complaint filed by plaintiff CDK Global, LLC, as successor-in-interest to ADP Dealer Services, Inc. ("Plaintiff"), states as follows:

**PARTIES**

1.      Admits that Plaintiff is a Delaware corporation with a place of business in Hoffman Estates, Illinois; and otherwise denies the allegations of paragraph 1.

2.     Admits that Tulley Automotive is a New Hampshire corporation with a place of business in Nashua, New Hampshire; and otherwise denies the allegations of paragraph 2.

3.     Denied.

## JURISDICTION AND VENUE

4.     Avers that the allegations of paragraph 4 state legal conclusions to which no response is required.  To the extent a response is required, denies the allegations of paragraph 4.

5.     Avers that the allegations of paragraph 5 state legal conclusions to which no response is required.  To the extent a response is required, denies the allegations of paragraph 5.

## FACTUAL ALLEGATIONS

6.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 6.

7.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 7.

8.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 8.

9.     Admitted, upon information and belief.

10.     Refers to the relevant document for a fair, accurate, and complete statement of its contents; and otherwise denies the allegations of paragraph 10.

11.     Refers to the relevant document for a fair, accurate, and complete statement of its contents; and otherwise denies the allegations of paragraph 11.

12.     Refers to the relevant document for a fair, accurate, and complete statement of its contents; and otherwise denies the allegations of paragraph 12.

13.     Refers to the relevant document for a fair, accurate, and complete statement of its contents; and otherwise denies the allegations of paragraph 13.

14.     Refers to the relevant document for a fair, accurate, and complete statement of its contents; and otherwise denies the allegations of paragraph 14.

15.     Refers to the relevant document for a fair, accurate, and complete statement of its contents; and otherwise denies the allegations of paragraph 15.

16.     Refers to the relevant document for a fair, accurate, and complete statement of its contents; and otherwise denies the allegations of paragraph 16.

17.     Refers to the relevant document for a fair, accurate, and complete statement of its contents; and otherwise denies the allegations of paragraph 17.

18.     Refers to the relevant document for a fair, accurate, and complete statement of its contents; and otherwise denies the allegations of paragraph 18.

19.     Refers to the relevant document for a fair, accurate, and complete statement of its contents; and otherwise denies the allegations of paragraph 19.

20.     Refers to the relevant document for a fair, accurate, and complete statement of its contents; and otherwise denies the allegations of paragraph 20.

21.     Refers to the relevant document for a fair, accurate, and complete statement of its contents; and otherwise denies the allegations of paragraph 21.

22.     Refers to the relevant document for a fair, accurate, and complete statement of its contents; and otherwise denies the allegations of paragraph 22.

23.     Refers to the relevant documents for a fair, accurate, and complete statement of their contents; and otherwise denies the allegations of paragraph 23.

24.     Denied.

25.     Denied.

26.     Refers to the relevant document for a fair, accurate, and complete statement of its contents; and otherwise denies the allegations of paragraph 26.

27.     Denied.

28.     Denied.

29.     Refers to the relevant document for a fair, accurate, and complete statement of its contents; and otherwise denies the allegations of paragraph 29.

30.     Refers to the relevant document for a fair, accurate, and complete statement of its contents; and otherwise denies the allegations of paragraph 30.

31.     Denied.

## FIRST CLAIM FOR RELIEF
### (BREACH OF CONTRACT)

32.     Repeats and realleges the answer to each of the allegations in all prior paragraphs, which are incorporated by reference as if set forth fully here.

33.     Refers to the relevant document for a fair, accurate, and complete statement of its contents; and otherwise denies the allegations of paragraph 33.

34.     Refers to the relevant document for a fair, accurate, and complete statement of its contents; and otherwise denies the allegations of paragraph 34.

35.     Refers to the relevant document for a fair, accurate, and complete statement of its contents; and otherwise denies the allegations of paragraph 35.

36.     Denied.

4

37.     Denied.

38.     Denied.

## SECOND CLAIM FOR RELIEF
### (REPLEVIN)

39.     Repeats and realleges the answer to each of the allegations in all prior paragraphs, which are incorporated by reference as if set forth fully here.

40.     Refers to the relevant document for a fair, accurate, and complete statement of its contents; and otherwise denies the allegations of paragraph 40.

41.     Refers to the relevant document for a fair, accurate, and complete statement of its contents; and otherwise denies the allegations of paragraph 41.

42.     Denied.

43.     Denied.

44.     Denied.

## THIRD CLAIM FOR RELIEF
### (CONTRACTUAL ATTORNEYS' FEES)

45.     Repeats and realleges the answer to each of the allegations in all prior paragraphs, which are incorporated by reference as if set forth fully here.

46.     Refers to the relevant document for a fair, accurate, and complete statement of its contents; and otherwise denies the allegations of paragraph 46.

47.     Denied.

## FOURTH CLAIM FOR RELIEF
### (CONVERSION)

48.     Repeats and realleges the answer to each of the allegations in all prior paragraphs, which are incorporated by reference as if set forth fully here.

49.     Refers to the relevant document for a fair, accurate, and complete statement of its contents; and otherwise denies the allegations of paragraph 49.

50.     Admits that Plaintiff owns certain equipment; and otherwise denies the allegations of paragraph 50.

51.     Denied.

52.     Denied.

53.     Denied.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state claims against Tulley Automotive for which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

Each of the purported claims set forth in the Complaint is barred, in whole or in part, by the doctrine of unclean hands.

### THIRD AFFIRMATIVE DEFENSE

Each of the purported claims set forth in the Complaint is barred, in whole or in part, because Plaintiff lacks standing to assert any or all of the claims alleged in the Complaint.

### FOURTH AFFIRMATIVE DEFENSE

Each of the purported claims set forth in the Complaint is barred, in whole or in part, because Plaintiff has failed to take reasonable, necessary, appropriate, and feasible steps to avoid and/or mitigate its alleged damages.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiff's recovery, if any, should be reduced or diminished to the extent its alleged damages were caused by its own bad faith.

## SIXTH AFFIRMATIVE DEFENSE

To the extent that Plaintiff may have suffered the injuries of which it complains, such injuries are attributable wholly or partially to its own culpable conduct, and any damages which might otherwise be found to be recoverable from Tulley Automotive should be diminished in the proportion which Plaintiff's culpable conduct bears to the culpable conduct which caused the damages.

## SEVENTH AFFIRMATIVE DEFENSE

All of the injuries alleged in the Complaint occurred, in whole or in part, as the result of a superseding, intervening cause and not as a result of any conduct, culpable or otherwise, on the part of Tulley Automotive.

## EIGHTH AFFIRMATIVE DEFENSE

Each of the purported claims set forth in the Complaint is barred, in whole or in part, because Tulley Automotive's conduct did not actually or proximately cause any of the losses or damages allegedly sustained by Plaintiff.

## NINTH AFFIRMATIVE DEFENSE

Each of the purported causes of action set forth in the Complaint is barred, in whole or in part, because Tulley Automotive at all times acted in good faith.

## TENTH AFFIRMATIVE DEFENSE

Tulley Automotive denies that Plaintiff has suffered any injury or damage whatsoever, and further denies it is liable to Plaintiff for any of the injury or damage claimed or for any injury or damage whatsoever.

## ELEVENTH AFFIRMATIVE DEFENSE

All of the injuries alleged in the Complaint occurred, in whole or in part, as the result of the assumption of the risks by Plaintiff of which it was or should have been aware.

## TWELFTH AFFIRMATIVE DEFENSE

Each of the purported causes of action set forth in the Complaint is barred, in whole or in part, to the extent that Plaintiff failed to join necessary and indispensable parties to this action.

## THIRTEENTH AFFIRMATIVE DEFENSE

Each of the purported claims set forth in the Complaint is barred, in whole or in part, by the doctrine of waiver.

## FOURTEENTH AFFIRMATIVE DEFENSE

Each of the purported claims set forth in the Complaint is barred, in whole or in part, by the doctrine of estoppel.

## FIFTEENTH AFFIRMATIVE DEFENSE

Each of the purported causes of action set forth in the Complaint is barred, in whole or in part, because of ratification, agreement, assent, acquiescence, or consent to Tulley Automotive's alleged conduct.

## SIXTEENTH AFFIRMATIVE DEFENSE

Tulley Automotive expressly reserves any and all rights to amend this Answer and assert additional defenses—affirmative or otherwise—in the event it discovers facts supporting such defenses.

## PRAYER FOR RELIEF ON THE COMPLAINT

WHEREFORE, Tulley Automotive respectfully requests judgment as follows:

A.      Dismissing the Complaint with prejudice;

B.      Awarding Tulley Automotive its costs, disbursements, and any allowable attorney's fees incurred in this case; and

C.      Awarding such other relief as the Court deems just and proper.

## COUNTERCLAIMS

Defendant-Counterclaimant Tulley Automotive Group, Inc. ("Tulley Automotive"), by and through its undersigned counsel, for its Counterclaims to the Complaint filed by plaintiff CDK Global, LLC, as successor-in-interest to ADP Dealer Services, Inc. ("ADP") states as follows:

## BACKGROUND

A.      **The Parties.**

1.      Tulley Automotive is a car dealership with locations in Manchester and Nashua, New Hampshire.

2.      Upon information and belief, ADP is a company that provides integrated technology solutions to over 26,500 auto, truck, heavy equipment, motorcycle, marine, and recreational vehicle dealers worldwide and about 8,000 clients in North America.  ADP, upon

information and belief, has approximately 3,612 clients in North America who bought the same product that was sold to Tulley Automotive.

3.      ADP has office locations throughout the United States in Alabama, California, Florida, Georgia, Illinois, Kentucky, Maryland, Michigan, New Jersey, Ohio, Oregon, Texas, Utah and Washington.

4.      Additionally, ADP has international office locations in Australia, Austria, Bahrain, Belgium, China, Cyprus, Denmark, Egypt, France, Germany, Hungary, Ireland, Italy, Japan, Kuwait, Malta, Mexico, Netherlands, New Zealand, Norway, Oman, Portugal, Qatar, Romania, Saudi Arabia, Singapore, South Africa, Spain, Sweden, Switzerland, South Korea, Thailand and the United Kingdom.  ADP has four office locations in Canada and another office location in the Caribbean region.

5.      According to ADP, it "has helped deliver technology solutions to dealers since 1972" and it is "the largest global provider of integrated information technology and digital marketing solutions."  ADP claims that it has "40 years of experience serving the automotive retail industry."

6.      ADP further publicizes that it "has approximately 9,000 associates worldwide" and "almost 4,000 associates dedicated to client services, account management, and implementation."  ADP has "nearly $2 billion in revenue."

7.      ADP advertises that its "technology makes it easier to run a profitable dealership."

**B.      ADP's Material Misrepresentations.**

8.      In or about December 2011, ADP approached Tulley Automotive in hopes of selling its products and services to Tulley Automotive at Tulley Automotive's offices in New

Hampshire.  These products and services were software based, and were meant to streamline Tulley Automotive's business operations.

9.     Tulley Automotive specifically dealt with Stephanie A. Manzoli, a Territory Sales Executive, and Joseph Zarra, a Director of Territory Development, who were both employed by ADP at the time of negotiations.  Ms. Manzoli and Mr. Zarra no longer work for ADP.

10.     During ADP's discussions with Tulley Automotive, ADP (via Ms. Manzoli and Mr. Zarra) made material misrepresentations, among other things, that:  (a) ADP's system performed better than Tulley Automotive's then-current system; and (b) ADP's system would increase Tulley Automotive's revenues.  Those representations were designed to induce Tulley Automotive to enter into certain contracts.

11.     For example, in his April 16, 2012 email, sent at 3:11 p.m. EST to Mark Tulley, Jack Tulley, Vince Tulley, Bryan Tulley and John Murphy (all employed by Tulley Automotive), Mr. Zarra wrote

> "I don't question the fact that your organization will continue to make money over the upcoming years with or without a new DMS. You have a very good management and very good product. However, with business projected to continue improving why not invest in a tool to help you get a larger share?  How is aligning with Arkona positioning Tulley to take advantage of the increased opportunity?  Arkona and the like are a pay less and get less proposition.  At a time when the industry is contracting that has a certain amount of appeal.  At a time when the industry is expanding and an investment of this type can return two times the cost, I would argue it is hard to see the logic of staying with a system that is manual intensive, security challenged, and has limited accountability."

12.     In her email dated April 16, 2012, sent at 2:04 p.m. EST to Mark Tulley, Jack Tulley, Vince Tulley, Bryan Tulley and John Murphy, Ms. Manzoli stated:  "I understand

the ADP proposal is more than your Arkona bill, but is Arkona really less expensive?  I thought

your business goals were to have better security and control of your organization, as well as

grow sales."

13.     At that time, Tulley Automotive and ADP did not agree on terms due to

the price of ADP's proposal, among other things.

14.     In or about April 2013, ADP approached Tulley Automotive again in

hopes of selling its products and services to Tulley Automotive.

15.     Tulley Automotive specifically dealt with Jeff Evans, a Competitive

Account Specialist, and Patti Krueger, a Solution Consultant, who were both employed by ADP

at the time of negotiations.  Mr. Evans no longer works for ADP.

16.     According to Mr. Evans, while he was employed by ADP, he was a

"hunter assigned to manage five million dollar territory to identify and target conquest prospects

and strategize to increase the penetration of ASP-cloud or Onsite server solutions, IP telephony,

and CRM solutions."

17.     During ADP's discussions with Tulley Automotive, ADP (via Mr. Evans

and Ms. Krueger) made material misrepresentations similar to those made by Ms. Manzoli and

Mr. Zarra.  Those representations were designed to induce Tulley Automotive to enter into

certain contracts.

18.     For example, on May 1, 2013, at about 10:00 a.m. EST, Mr. Evans

represented to Bryan Tulley, Jack Tulley, Mark Tulley and John Murphy that "ADP would

reduce complexity, that ADP was more intuitive in sales and service, and ADP would reduce the

number of steps to complete a process."  Mr. Evans made this misrepresentation during a

meeting held at Tulley Automotive's offices in New Hampshire.

19.     Additionally, during ADP's discussions with Tulley Automotive, ADP was aware of Tulley Automotive's needs as a multi-dealer business operation.  ADP was also aware that Tulley Automotive relied on ADP's alleged expertise in providing dealer management solutions ("DMS") systems to other multi-dealer businesses.  ADP, however, made material misrepresentations that the system sold to Tulley Automotive would be capable of serving Tulley Automotive's needs by providing the information necessary to operate a multi-dealer business.

20.     During the May 1, 2013 meeting, at about 10:00 a.m. EST, Mr. Evans also misrepresented to Bryan Tulley, Jack Tulley, Mark Tulley and John Murphy that ADP's DMS system could integrate with (a) other automotive platforms such as those offered by DealerSocket and FirstLook; and (b) ADP's own payroll system.

21.     But for ADP's material misrepresentations, Tulley Automotive would not have entered into any agreements with ADP.

22.     ADP made all of the relevant misrepresentations to Tulley Automotive over the telephone, via email, or in face-to-face meetings in Tulley Automotive's offices in New Hampshire.

**C.     The Applicable Agreement.**

23.     Based on ADP's material misrepresentations and omissions (as described below), and in reliance on ADP's purported experience in the automotive retail industry, Tulley Automotive entered into a form agreement with ADP (as described in the Complaint), whereby ADP leased equipment to Tulley Automotive in New Hampshire and performed related services for Tulley Automotive in New Hampshire.

24.     On June 26, 2013, based on ADP's assurances, representations and omissions, and in reliance on ADP's supposed knowledge and expertise in DMS systems, Tulley

13

Automotive executed a Master Services Agreement (the "Agreement") in New Hampshire. Upon information and belief, the Agreement is ADP's standard form agreement.

25.     Pursuant to the Agreement, ADP promised to provide certain equipment that would be "in good working order."

26.     In the Agreement, ADP further promised to provide certain services and software that would "conform to their respective functional and technical specifications."

27.     Upon executing the Agreement, Tulley Automotive submitted a check to ADP for $5,190.00.

28.     In fact, up until ADP's filing of this lawsuit on May 1, 2015, Tulley Automotive made timely payments under the Agreement—even though Tulley Automotive met major difficulties in attempting to utilize ADP's system (as described below).

**D.      Problems with ADP's System and Services.**

29.     Contrary to the representations made by ADP, Tulley Automotive's use of ADP's system resulted in consistently longer time frames for data input and information retrieval at all points of operations as compared to the time it took Tulley Automotive to perform the same functions using its prior system.

30.     The ADP system was neither more efficient nor faster than established industry metrics as had been represented by ADP.  Rather, the ADP system required more time and work force.

31.     After numerous training and staffing conferences and meetings, extensive correspondence from Tulley Automotive to ADP, several proposals by ADP suggesting that additional and/or new equipment and programs be purchased as add-ons, and several attempts to

change system data input, it became obvious that the promised functions of the ADP system sold to Tulley Automotive had not been, and could not be, delivered.

32.     Similarly—despite being aware during negotiations that Tulley Automotive is a three-franchise operation which purportedly required a three-company system—ADP sold a lesser product to Tulley Automotive because it met Tulley Automotive's pricing requirements.  ADP sold the system to Tulley Automotive knowing that the system could never meet the demands of Tulley Automotive's multi-franchise operation.  ADP withheld this material information from Tulley Automotive so that ADP could close the sale transaction.

33.     Further, Tulley Automotive made a video demonstrating that ADP's system took 20 steps to perform a function that could be performed in two or three steps by Tulley Automotive's pre-ADP system.  The video was submitted to ADP who failed to correct the deficiencies and instead suggested that Tulley Automotive purchase add-ons.

34.     Contrary to ADP's representations that the ADP system would provide solutions that would increase the flow of information necessary for Tulley Automotive and its customers to conduct business and increase Tulley Automotive's revenues, the ADP system sold to Tulley Automotive caused severe problems with both the generation and flow of information critical to Tulley Automotive's business, was costly and time consuming to use, and caused Tulley Automotive to suffer a loss of both time and money.

**E.     ADP's Material Omissions.**

35.     Upon information and belief, Tulley Automotive is not the only customer to have encountered significant issues with ADP's products or to have been misled by ADP.  Across the country, ADP's customers have accused ADP of engaging in misconduct when selling, and attempting to deliver, its products and services.  *See, e.g., ADP Dealer Services, Inc.,*

15

*et ano. v. Southern California Fleet Services, Inc.*, Case No. 13-CV-334 (United States District Court for the District of New Jersey), Dkt. No. 60; *ADP Dealer Services, Inc. v. Wright Automotive, Inc.*, Docket No. MRS-1622-12 (Superior Court of New Jersey, Morris County) (Answer, Affirmative Defenses, Counterclaims, Third-Party Complaint, Designation of Trial Counsel and Certifications Pursuant to <u>R</u>. 4:5 and <u>R</u>. 4:6); *ADP Dealer Services, Inc. v. Bill Gaddis Chrysler Plymouth, Inc.*, Case No. 11-CV-0475 (United States District Court for the Southern District of Indiana), Dkt. No. 17; *ADP Commercial Leasing LLC, et al. v. Medford Lincoln-Mercury, Inc., et al.*, Case No. 10-CV-63 (United States District Court for the Middle District of Alabama), Dkt. No. 18; *ADP Commercial Leasing, LLC, et al. v. M.G. Santos, Inc., et al.*, Case No. 13-CV-00587 (United States District Court for the Eastern District of California), Dkt. No. 29; *SJ Automotive Holdings, Inc., et ano. v. ADP Dealer Services, Inc.*, Case No. 13-CV-00210 (United States District Court for the Eastern District of Kentucky), Dkt. No. 17.

36.     Upon further information and belief, ADP ignores the known problems with ADP's system and products, and conceals the fact that ADP's customers across the country have lodged similar complaints after they purchased the same products that were sold to Tulley Automotive.

37.     Moreover, for years, ADP's customers have complained about ADP's products, services and business practices on social media sites, including, but not limited to, www.drivingsales.com.  Upon information and belief, ADP monitors these sites and is fully aware of the complaints.

38.     Upon further information and belief, ADP is also aware that BMW of North America, LLC ("BMW") hired Jane Copeland, CEO of API International, Inc., to assist

BMW dealerships across the country in resolving their problems with the same ADP products that were sold to Tulley Automotive.

39.     Thus, despite being made fully aware of similar problems by other customers, ADP not only withheld such information from Tulley Automotive, but also made affirmative misrepresentations with full knowledge that the ADP system sold to Tulley Automotive would not work as represented.

## CLAIMS FOR RELIEF

### COUNT I
**(Fraud)**

40.     Tulley Automotive repeats and realleges the allegations set forth above as though fully set forth herein.

41.     As set forth above, ADP made untrue statements of material fact.  ADP made these statements with knowledge of their falsity and with reckless disregard as to their falsity.  ADP made these statements with the intent that Tulley Automotive rely on them to its detriment and Tulley Automotive did justifiably rely on them.  As a result of ADP's fraud, Tulley Automotive has suffered damages.

42.     In order to induce Tulley Automotive to enter into the Agreement, ADP represented that the system sold to Tulley Automotive would be capable of serving Tulley Automotive's business needs, despite knowing that this information was inaccurate, among other things.

43.     ADP was aware that Tulley Automotive would rely on ADP's representations regarding the ADP system, and that without these representations, Tulley Automotive would not have entered into the Agreement.  Tulley Automotive would not have entered into the Agreement had it known that the representations made by ADP were false.  As a

17

result of ADP's misrepresentations, Tulley Automotive has suffered damages arising from the ill-fated efforts to implement ADP's misrepresented system.

44.     ADP knew at the time it entered into the Agreement that its statements were false, or at the very least, made recklessly, without any belief in the truth of the statements.

45.     ADP intended to defraud Tulley Automotive and induce reliance by Tulley Automotive in this regard.

46.     Tulley Automotive justifiably, reasonably and foreseeably relied on ADP's representations regarding the ADP system.  ADP knew that Tulley Automotive was relying on ADP's representations, and ADP encouraged such reliance.  ADP knew that its representations described above would be relied upon by Tulley Automotive in connection with its decision to enter into the Agreement.

47.     ADP's representations substantially influenced Tulley Automotive's decision to enter into the Agreement.  Tulley Automotive would never have agreed to enter into the Agreement had it known that ADP's representations about the ADP system were false.

48.     ADP further deceived and defrauded Tulley Automotive by ignoring and concealing the known problems with ADP's system and products, and concealing the fact that ADP's customers across the country had lodged similar complaints after they purchased the same products that were sold to Tulley Automotive.

49.     As a result of ADP's false and misleading statements, and omissions of material information, Tulley Automotive has suffered, and continues to suffer, damages in an amount not less than $3.5 million.

50.     Because ADP committed these acts wantonly, oppressively, and with willful disregard of Tulley Automotive's rights, Tulley Automotive is entitled to punitive damages.

## COUNT II
### (Rescission)

51.     Tulley Automotive repeats and realleges the allegations set forth above as though fully set forth herein.

52.     ADP made material misrepresentations and omissions regarding the system ADP leased to Tulley Automotive and those misrepresentations and omissions induced Tulley Automotive into entering the Agreement.  Had Tulley Automotive been aware of ADP's and misrepresentations and omissions, it would never have entered into the Agreement.

53.     Tulley Automotive is therefore entitled to rescission of the Agreement between Tulley Automotive and ADP as described in the Complaint because of the material misrepresentations and omissions by ADP.

## COUNT III
### (Breach of the Agreement)

54.     Tulley Automotive repeats and realleges the allegations set forth above as though fully set forth herein.

55.     ADP's express representations and warranties in the Agreement that the ADP equipment would be "in good working order" and that ADP's services and software would "conform to their respective functional and technical specifications" are untrue and inaccurate in material ways.  Indeed, ADP's equipment, software, and services sold to Tulley Automotive were not functional as detailed above.  Therefore, ADP is in breach of the Agreement.  The

untrue and inaccurate representations and warranties materially and adversely affect Tulley

Automotive's rights.

56.     Notwithstanding the problems encountered by Tulley Automotive in

attempting to utilize ADP's system, Tulley Automotive made timely payments under the

Agreement up until the filing of this lawsuit on May 1, 2015.

57.     Tulley Automotive has incurred and continues to incur damages as a direct

and proximate result of ADP's breaches in an amount not less than $3.5 million.

## COUNT IV
### (Violation of the New Jersey Consumer Fraud Act)

58.     Tulley Automotive repeats and realleges the allegations set forth above as

though fully set forth herein.

59.     Under the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq.*,

consumer fraud is "any unconscionable commercial practice, deception, fraud, false pretense,

false promise or misrepresentation" in connection with the sale or lease of goods and services.

*See* N.J.S.A. 56:8-2.

60.     As set forth above, employees of ADP, including Mr. Evans, falsely and

deceptively stated and/or represented, among other things, that: (a) the ADP system sold to

Tulley Automotive would provide solutions that would increase the flow of information

necessary for Tulley Automotive and its customers to conduct business; (b) the ADP system sold

to Tulley Automotive would increase Tulley Automotive's revenues; and (c) the ADP system

sold to Tulley Automotive would meet Tulley Automotive's business needs.

61.     For example, on May 1, 2013, at about 10:00 a.m. EST, Mr. Evans

represented to Bryan Tulley, Jack Tulley, Mark Tulley and John Murphy that "ADP would

reduce complexity, that ADP was more intuitive in sales and service, and ADP would reduce the

number of steps to complete a process." Mr. Evans made this misrepresentation during a meeting held at Tulley Automotive's offices in New Hampshire.

62.    Mr. Evans' foregoing representations were false and misleading.

63.    ADP furthered the fraudulent scheme by engaging in, among other things, the unfair and deceptive trade practices of invoicing and charging Tulley Automotive for ADP's products and services when ADP knew or should have known that it had misrepresented the attributes and capabilities of ADP's products and the products could not be used for the purposes represented by ADP.

64.    ADP further deceived and defrauded Tulley Automotive by ignoring and concealing the known problems with ADP's system and products, and concealing the fact that ADP's customers across the country had lodged similar complaints after they purchased the same products that were sold to Tulley Automotive.

65.    All of the foregoing acts were performed in the course of ADP's trade or commerce.

66.    These and other false statements, representations, omissions, and actions by ADP were material to Tulley Automotive's decision to enter into the Agreement.

67.    Tulley Automotive reasonably relied on ADP's false and deceptive statements, representations, omissions, and/or acts and was reasonably induced to obtain ADP's products and services based upon ADP's false statements, representations, omissions, and/or acts.

68.    ADP's misconduct—directed to Tulley Automotive and the public in general—has directly and proximately caused Tulley Automotive to incur damages in an amount not less than $3.5 million.

69.     Indeed, the ADP system sold to Tulley Automotive caused severe problems with both the generation and flow of information critical to Tulley Automotive's business, was costly and time consuming to use, and caused Tulley Automotive to suffer a loss of both time and money.

70.     As a result, ADP has violated the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq.*

71.     Tulley Automotive has incurred damages as a direct and proximate result of ADP's violations of the New Jersey Consumer Fraud Act,  N.J.S.A. 56:8-1, *et seq.* in an amount not less than $3.5 million.

72.     Tulley Automotive continues to incur damages as ADP is now seeking to recover on an alleged obligation which was obtained in violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq.*

73.     Pursuant to the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq.*, Tulley Automotive is therefore entitled to treble damages, attorney's fees, and costs.

74.     ADP's acts and omissions described herein were actuated by actual malice or accompanied by a wanton and willful disregard of persons like Tulley Automotive, who foreseeably might be harmed by ADP's acts or omissions.

## PRAYER FOR RELIEF

WHEREFORE, Tulley Automotive respectfully requests judgment as follows:

A.     Awarding Tulley Automotive compensatory damages in an amount not less than $3.5 million, together with pre-judgment interest at the maximum rate allowable by law;

B.       Awarding Tulley Automotive its costs, disbursements, and any allowable attorney's fees incurred in connection with this case;

C.       Awarding Tulley Automotive punitive damages in an amount to be proved at trial;

D.       Awarding Tulley Automotive treble damages in an amount to be proved at trial;

E.       Rescission of all agreements between Tulley Automotive and ADP; and

F.       Awarding such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Tulley Automotive Group, Inc., hereby demands a jury trial on all issues triable of right by a jury.

Dated:  New York, New York
      June 25, 2015

                    HODGSON RUSS LLP


                    By: */s/ Heidi J. Sorvino* _____

                    Carmine J. Castellano (*pro hac vice*)
                    Heidi. J. Sorvino
                    1540 Broadway, 24th Floor
                    New York, New York 10036
                    (212) 751-4300
                    (212) 751-0928 (fax)

                    *Attorneys for Defendant*
                    *Tulley Automotive Group, Inc.*

To:    Rajiv D. Parikh, Esq.
        Michael C. McQueeny, Esq.
        GENOVA BURNS LLC
        *Attorneys for Plaintiff*
        494 Broad Street
        Newark, New Jersey 07102