<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **CDK GLOBAL, LLC,**  **Plaintiff,**  v.  **TULLEY AUTOMOTIVE GROUP, INC., et al.,**  **Defendants.** | **Civil Action No. 15-3103 (KM)**  **OPINION & ORDER** |

**CLARK, Magistrate Judge**

This matter comes before the Court on Plaintiff CDK Global, LLC's ("CDK" or "Plaintiff") renewed motion to seal portions of Exhibit A to Plaintiff's reply in response to its motion to dismiss the Amended Counterclaims and portions of Dkt. Nos. 76, 78 and 91. [Dkt. No. 127]. Defendant Tulley Automotive Group, Inc. ("Tulley" or "Defendant") filed opposition to Plaintiff's motion [Dkt. No. 135], and Plaintiff has replied [Dkt. No. 141]. The Court has fully reviewed the arguments made in support of, and in opposition to, Plaintiff's motion and considers this motion without oral argument pursuant to Fed. R. Civ. P. 78 and L. Civ. R. 78.1(b). For the reasons set forth more fully below, Plaintiff's motion is **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

As the parties are intimately familiar with the facts surrounding this matter, the Court will address only those relevant to the present motion.[1]  Plaintiff seeks to seal two categories of documents.  The first category of documents includes portions of "Exhibit A," filed in support of Plaintiff's reply in response to its motion to dismiss Defendant's amended counterclaims.  [*See* Dkt. No. 49].  "Exhibit A" comprises contracts extended to Defendant by Plaintiff including the Master Services Agreement ("MSA"), addenda to the MSA, pricing schedules and a Product Guide (collectively, "the MSA contracts").  [*See* Dkt. No. 127-2 at 5; Dkt. No. 49, Exhibit A].  The MSA contracts govern Defendant's use of Plaintiff's Dealer Management System software known as "Drive." [Dkt. No. 141 at 8].  On November 30, 2015, Plaintiff filed a motion to seal the MSA contracts, which Defendant opposed.  [Dkt. Nos. 50, 54].

The second category of documents stems from a number of intra-company e-mails that Plaintiff produced during the course of discovery and claims are protected by the work product privilege.  On March 9, 2016, Defendant filed a letter under seal with the Court that challenged Plaintiff's assertion of privilege and attached the disputed e-mails as exhibits to the letter.  [Dkt. No. 76].  On March 11, 2016, Plaintiff filed a letter in opposition under seal.  [Dkt. No. 78].  On March 16, 2016, the Court issued a Letter Order directing the parties to meet and confer regarding the work product privilege dispute, among other discovery issues, and thereafter to file a joint letter outlining any remaining issues.  [Dkt. No. 84].  After an unsuccessful meet and confer, the parties filed a joint letter under seal with the Court on March 28, 2016.  [Dkt. No. 91]. On April 7, 2016, Plaintiff filed a motion to seal Dkt. Nos. 76, 78 and 91, which Defendant opposed.  [Dkt. Nos. 95, 105].

---

[1] A factual background of this matter is also set forth in District Judge McNulty's April 29, 2016 Opinion. [*See* Dkt. No. 103].

In a Letter Order dated July 27, 2016 the Court denied without prejudice to renewal Plaintiff's motion to seal the MSA contracts and Plaintiff's motion to seal Dkt. Nos. 76, 78 and 91, noting a failure to provide narrowly tailored proposed redactions and other procedural flaws. [*See generally* Dkt. No. 124]. Plaintiff filed the present renewed motion to seal on August 11, 2016. [Dkt. No. 127]. On October 19, 2016, the Court held a telephonic conference on the record with respect to Defendant's privilege challenge, among other issues. [Dkt. No. 147]. In a Letter Order dated October 24, 2016, the Court, in part, denied Defendant's privilege challenge finding that the disputed intra-company e-mails were protected by the work product privilege. [*See* Dkt. No. 146].

## LEGAL STANDARD

There is a presumption of access to judicial proceedings and records. *See In re Cendant Corp.*, 260 F.3d 183, 192 (3d Cir. 2001) (internal quotations and citation omitted). Nonetheless, litigants may move to seal information associated with a judicial proceeding by demonstrating "good cause." *Securimetrics, Inc. v. Iridian Techs., Inc.*, No. 03-4394, 2006 WL 827889, at *2 (D.N.J. Mar. 30, 2006). Good cause requires "a particularized showing that disclosure will cause a 'clearly defined and serious injury to the party seeking closure.' " *Id.* (citing *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994)); *Glenmede Trust Co. v. Thompson,* 56 F.3d 476, 483 (3d Cir.1995). The good cause standard is also applied where disputed materials are discovery materials attached to a discovery motion. *See Pansy*, 23 F.3d at 786 (citing Fed. R. Civ. P. 26(c); *Smith v. Bic Corp.,* 869 F.2d 194, 199 (3d Cir.1989)); *Allied Corp. v. Jim Walter Corp.*, No. 86-3086, 1996 WL 346980, at *4 (E.D. Pa. June 17, 1996).

3

In this District, motions to seal are governed by Local Civil Rule 5.3. Rule 5.3 requires the moving party to describe: (a) the nature of the materials or proceedings at issue; (b) the legitimate private or public interest which warrants the relief sought; (c) the clearly defined and serious injury that would result if the relief sought is not granted; and (d) why a less restrictive alternative to the relief sought is not available. L. Civ. R. 5.3(c)(2). After evaluating each factor under Rule 5.3, a court's ultimate decision must derive from a balancing test placing the specific need for privacy opposite the general presumption of public access. *Pansy*, 23 F.3d at 787.

## DISCUSSION

Plaintiff contends that two categories of documents in question should be sealed to protect legitimate private interests. Under Rule 5.3, Plaintiff must first explain the nature of the materials at issue. The Court's evaluation of this factor rests on whether the materials involve "matters of legitimate public concern." *Pansy*, 23 F.3d at 788. Where the materials in a confidentiality dispute are of particular interest to the public, this factor weighs in favor of public access; where the materials are truly of a private nature, this factor weighs in favor of sealing the materials. *Id.*

Plaintiff must next describe the legitimate private interests that warrant the relief sought. This factor is often utilized to weigh legitimate private interests against the public's general interest in disclosure, as well as the public's specific interest in information involving "matters of legitimate public concern." *Castellani v. City of Atl. City*, 102 F. Supp. 3d 657, 668-69 (D.N.J. 2015) (citing *Pansy*, 23 F.3d at 788). Courts, in practice, have granted motions to seal where a party's private interest outweighs public interest. *See Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2014 WL 1233039, at *3 (D.N.J. Mar. 25, 2014) (granting motion to seal and finding a

legitimate private interest in preventing public disclosure of "business agreements, trade secrets, or commercial information"); *Goldenberg v. Indel, Inc.*, No. 09-5202, 2012 WL 15909, at *3 (D.N.J. Jan. 3, 2012) (holding that internal email communications between different members of a company or organization were protected business information if emails related to private financial information).

Third, Plaintiff must describe a clearly defined and serious injury, providing more than "broad allegations of harm, unsubstantiated by specific examples or articulated reasoning," that would result if its motion to seal were denied. *Pansy*, 23 F.3d at 786; *Younes v. 7-Eleven, Inc.*, No. 13-3500, 2014 WL 1959246, at *3 (D.N.J. May 15, 2014) (internal quotations and additional citations omitted). If Plaintiff can demonstrate that disclosure would result in a clearly defined and serious loss of a competitive business advantage, this factor weighs in favor of protecting the disputed documents. *Bock*, 2014 WL 1233039, at *3; *Goldenberg*, 2012 WL 15909, at *4.

Lastly, Plaintiff must demonstrate that there is no less restrictive alternative means available to protect its sensitive information. This factor evaluates whether requests to protect documents are overbroad and whether Plaintiff's interests "can be adequately served by filing a more narrowly tailored" motion. *Bock*, 2014 WL 1233039, at *3.

The Court will address each category of documents that Plaintiff seeks to seal in turn.

### I. Plaintiff's Motion to Seal Exhibit A to Plaintiff's Reply in Response to its Motion to Dismiss the Amended Counterclaims

Plaintiff seeks to seal the MSA contracts that are referenced in the complaint and form the basis of its claims against Defendant. Plaintiff submits that the MSA contracts, filed as "Exhibit A" to its reply brief, contain commercially sensitive and proprietary non-public business information and confidential pricing information. [*See* Dkt. No. 127-2 at 6-7]. Plaintiff argues that disclosure of these materials, which it designated as confidential pursuant to the

Discovery Confidentiality Order, would cause harm to its competitive position in the marketplace. [*Id.* at 7].

In opposition, Defendant contends that Plaintiff has publicly filed the MSA and specific pricing terms of other customers in multiple lawsuits and therefore cannot now seek to maintain the same material under seal in this action. [*See* Dkt. No. 135 at 4]. Defendant further argues that Plaintiff has failed to make a particularized showing of serious harm that will occur if the MSA is not sealed and has failed to demonstrate the unavailability of less restrictive alternatives. [*See id.* at 11-12].

As an initial matter, it is well settled that a party's classification of material as protected or confidential does not automatically satisfy the criteria for sealing pursuant to Rule 5.3. *In re: Benicar (Olmesarten) Prod. Liab. Litig.*, No. 15-2606, 2016 WL 266353, at *3 (D.N.J. Jan. 21, 2016) (citing *Pansy*, 23 F.3d at 786-90); *MEI, Inc. v. JCM Am. Corp.*, No. 09-351, 2010 WL 4810649, at *2 (D.N.J. Nov. 1, 2010)). Notwithstanding, Plaintiff has shown good cause to seal portions of these documents.

Plaintiff avers that although its agreements with Defendant may resemble those made with other customers, the present MSA contracts include other non-standard terms, in addition to a product mix and pricing arrangements unique to Defendant. [*See* Dkt. No. 127-2 at 8]. Plaintiff claims that releasing Defendant's unique pricing and terms may create a strain on its relationship with other current clients and ultimately harm its bottom line. [*See id.* at 8-9]. Plaintiff further argues that releasing information contained in the Product Guide, available only through a password-protected portal for customers on its website, might allow competitors to reconfigure their own products to compete more effectively against it and thereby harm Plaintiff's competitive standing. [*See id.* at 7, 9]. According to Plaintiff, the Product Guide

contains detailed material and information about the functioning of its products and systems. [*See id.* at 9].

Plaintiff's asserted privacy interests are legitimate. *See Bracco Diagnostics, Inc. v. Amersham Health, Inc.,* No. 03–6025, 2007 WL 2085350, at *5 (D.N.J. July 18, 2007) (explaining that maintaining competitiveness is a legitimate privacy interest that militates in favor of sealing). Moreover, factors weighing against the interest of privacy, such as public safety, greater fairness, and efficiency, are not present. *Overton v. Sanofi-Aventis U.S., LLC*, No. 13-05535, 2014 WL 1554718, at *2 (D.N.J. Apr. 9, 2014) (citing *Pansy*, 23 F.3d at 787-89). District Courts in the Third Circuit have repeatedly found serious harm in disclosing financial information that would injure a party's standing in the competitive marketplace. *Goldenberg*, 2012 WL 15909, at *3 (stating that "the confidentiality of business agreements, trade secrets or commercial information are a legitimate private interest and the disclosure of this information can be used for the improper purpose of causing harm to the litigant's competitive standing in the marketplace") (citing, in part, *Zenith Radio Corp. v. Matushita Electric Industrial Co.,* 529 F. Supp. 866, 890 (E.D. Pa. 1981); *Hershey Co. v. Promotion in Motion, Inc.,* No. 07–1601, 2010 WL 1812593 at *3 (D.N.J. May 4, 2010)).

The Court finds a legitimate privacy interest in preventing portions of the MSA contracts from being available to the general public. The Court also finds that Plaintiff would suffer serious and irreparable harm to its competitive standing in the marketplace if the MSA (containing pricing terms unique to Defendant) and the Product Guide (containing detailed material and information regarding the functioning of Plaintiff's products and systems) were available to the public and Plaintiff's competitors. *See Glenmede Trust Co.,* 56 F.3d at 487 n.19 (recognizing that a protective order may be sought to protect a business entity from revealing

names of clients or financial information that is relevant for discovery purposes but not of public import).

Finally, Plaintiff has proposed narrowly tailored redactions to seal financial information and selected confidential terms in the MSA contracts extended to Defendant and not previously made publically available, along with the Product Guide in its entirety. [*See* Dkt. No. 141 at 9]. Defendant's argument that Plaintiff has filed general terms of the MSA and specific pricing terms related to other customers in other lawsuits is not overlooked by the Court, nor is Defendant's argument that Plaintiff's Product Guide is not confidential. [Dkt. No. 135 at 9-10]. Defendant contends that Plaintiff will not suffer financial damage or harm if Defendant's "three-year-old contract terms are made public" or the Product Guide, already known to thousands of Plaintiff's customers, is made publically available. [*Id.* at 11-12]. However, Plaintiff – rather than Defendant – is in the best position to judge the sensitivity and importance of the documents in question. *Overton*, 2014 WL 1554718, at *3. If documents as a whole contain sensitive information, redaction is not a viable alternative to sealing. *Bright v. Asset Acceptance, LLC*, 292 F.R.D. 190, 203 (D.N.J. 2013). For the reasons set forth above, the Court finds good cause to seal the MSA contracts.

## II.     Plaintiff's Motion to Seal Dkt. Nos. 76, 78 and 91

Plaintiff next submits that Dkt. Nos. 76, 78 and 91 comprise of work product information, the identity of a customer irrelevant to this matter, and proprietary strategic planning and record keeping information. [*See* Dkt. No. 127-2 at 10]. Plaintiff argues that disclosure of this information would benefit its competitors, potentially jeopardize Plaintiff's relationship with a customer and harm its competitive standing. [*See id.* at 10, 14-16]. Plaintiff asserts that the identified harm and the remainder of its submission satisfy the Rule 5.3 factors.

In opposition, Defendant primarily argues that Plaintiff has not satisfied the Rule 5.3 factors, as the information it seeks to seal is neither confidential nor privileged. [*See* Dkt. No. 135 at 12]. Defendant further argues that Plaintiff failed to set forth the specific harm it could suffer if the allegedly protected information was made public. [*See id.* at 16].

### A. Dkt. No. 76

On March 9, 2016, Defendant filed a letter under seal with the Court which challenged Plaintiff's assertion of privilege with respect to a number of intra-company e-mails produced during the course of discovery and which Plaintiff claims are protected by the work product privilege. [Dkt. No. 76]. In support of its privilege challenge, Defendant attached the disputed e-mails as exhibits to its letter. [Dkt. No. 76-1].

In a Letter Order dated October 24, 2016, the Court, in part, denied Defendant's privilege challenge, finding that the disputed intra-company e-mails were protected by the work product privilege. [*See* Dkt. No. 146]. Accordingly, the e-mails, as attached to Dkt. No. 76, shall remain filed under seal. However, a review of Defendant's letter reveals no specific references to the disputed e-mails, or any other confidential documents or legitimate private interests, which would warrant sealing the letter in its entirety. Therefore, Defendant's March 9, 2016 letter shall be unsealed.[2]

### B. Dkt. No. 78

On March 11, 2016, Plaintiff filed a letter in opposition to Defendant's privilege challenge under seal. [Dkt. No. 78]. In support of its opposition, Plaintiff filed six exhibits under seal, five of which comprise of e-mail exchanges between counsel leading up Defendant's

---

[2] As of the writing of this Opinion and Order, no proposed redaction of the March 9, 2016 letter has been submitted to the Court for consideration.

March 9, 2016 letter and Plaintiff's opposition.  [Dkt. No. 78-1, 78-2, 78-3, 78-5, 78-6].  The remaining exhibit is a pre-suit letter from Defendant's attorney to Plaintiff's in-house counsel dated April 21, 2014.  [Dkt. No. 78-4].

Plaintiff's motion seeks to seal sparse portions of its March 9, 2016 letter that reference the pre-suit letter and the resulting disputed e-mails [*see* Dkt. No. 76, *supra*] and to seal the pre-suit letter in its entirety.  It appears that Plaintiff has since agreed to unseal the pre-suit letter.  [*See* Dkt. No. 141 at 13].[3]  Accordingly, Exhibits 1 through 6, as attached to Plaintiff's March 11, 2016 letter shall be unsealed.  With respect to the March 11, 2016 letter itself, the Court sees no reason why Plaintiff's proposed redactions should remain.  Protecting any reference to the pre-suit letter is irrelevant as the letter itself will be unsealed.  Plaintiff also seeks to redact a statement that the disputed e-mails, which were the subject of Defendant's privilege challenge, were prepared at the direction of Plaintiff's counsel in anticipation of litigation.  This information, however, has already been made publically known.  [Dkt. No. 125 at 4].  As a result, Plaintiff's request to seal portions of it March 11, 2016 letter is denied, and the letter shall be unsealed.

### C. Dkt. No. 91

At the Court's direction and after an unsuccessful meet and confer, the parties filed a joint letter under seal regarding the then-outstanding work product privilege dispute, among other discovery issues, on March 28, 2016.  [Dkt. No. 91].  Plaintiff's renewed motion seeks to

---

[3] In the reply brief in support of its renewed motion to seal, Plaintiff states that "CDK agrees that Exhibit 4 to Dkt. 91, a pre-suit letter from Tulley's attorney to CDK's in-house counsel, does not need to be sealed. [Dkt. No. 141 at 13; *see also id.* at 14]. Exhibit 4 to Dkt. No. 91 is not a pre-suit letter, but is rather the Declaration of Robert Bour, filed by Plaintiff in support of its position in a joint letter to the Court dated March 28, 2016. [*See* Dkt. No. 91, *infra*]. In light of Plaintiff's written description of the exhibit as the pre-suit letter, and given that the pre-suit letter is also attached as Exhibit 4 but to Dkt. No. 78, the Court assumes that Plaintiff made a transcription error and that Plaintiff concedes to unsealing Exhibit 4 to Dkt. No. 78, the April 21, 2014 pre-suit letter.

10

seal discrete portions of the parties' joint letter and portions of two exhibits attached to the letter in support of Plaintiff's position – the Declaration of Christopher Tragasz [Dkt. No. 91-1] and the Declaration of Robert Bour [Dkt. No. 91-4].  Plaintiff argues that the letter and declarations warrant sealing to protect confidential and proprietary business information.

There are legitimate private interests at stake if some, but not all, of these documents are disclosed.  Mr. Tragasz's Declaration explains in detail how Plaintiff organizes its records, functions internally, keeps information about products and customers, and responds to customer concerns [Dkt. No. 127-2 at 15-16].  If unsealed, Plaintiff's competitors would have access to this sensitive information that could be used against it in the marketplace.  *Bright*, 292 F.R.D. at 203.  Sealing limited portions of Mr. Tragasz's Declaration, in the form proposed by Plaintiff, appears to be the least restrictive means available.  The Court notes that in Plaintiff's reply brief to the present motion, Plaintiff agrees to unseal Paragraphs 16 and 20 of Mr. Tragasz's Declaration.  [See Dkt. No. 141 at 14].  Therefore, Plaintiff shall file a revised version of this exhibit, omitting the aforementioned paragraphs and any corresponding reference to such paragraphs that are redacted in the March 28, 2016 joint letter.

With respect to Mr. Bour's Declaration, Plaintiff submits that it explains confidential business relationships and information regarding strategic planning.  [Dkt. No. 127-1 at 16].  If made available to the public, Plaintiff argues it would place it at a competitive disadvantage.  Although Mr. Bour's Declaration may contain confidential or sensitive information, Plaintiff's proposed redactions do not appear to protect such information.  Rather, Plaintiff seeks to seal portions of Paragraphs 12, 13 and 15 of Mr. Bour's Declaration, which contain general statements and reveal no specific references to confidential information or legitimate private

11

interests to warrant sealing.  Therefore, the Declaration of Robert Bour, and any redacted reference to this declaration in the March 28, 2016 letter, shall be unsealed.

## CONCLUSION

Having considered the papers submitted pursuant to Fed. R. Civ. P. 78, and for the reasons set forth above;

**IT IS** on this 3rd day of March, 2017,

**ORDERED** that Plaintiff's motion to seal Exhibit A to Plaintiff's reply is response to its motion to dismiss the Amended Counterclaims is **GRANTED**; and it is further

**ORDERED** that Plaintiff's motion to seal Dkt. No. 76, 78 and 91 is **GRANTED IN PART AND DENIED IN PART**; and it is further

**ORDERED** that the Clerk of the Court shall unseal Dkt. No. 76 at the appropriate time; and it is further

**ORDERED** that Dkt. No. 76-1 shall remain under seal; and it is further

**ORDERED** that the Clerk of the Court shall unseal Dkt. No. 78, including attached exhibits, in its entirety at the appropriate time; and it is further

**ORDERED** that the Clerk of the Court shall maintain Dkt. No. 91 and 91-1 under seal for fourteen (14) days from the entry of this Order to allow Plaintiff to file a revision that shall omit the redaction to Paragraphs 16 and 20 in Dkt. No. 91-1 and that shall omit the redaction made in reference to Paragraph 20 in Dkt. No. 91; and it is further

**ORDERED** that the Clerk of the Court shall unseal Dkt. Nos. 91-2, 91-3 and 91-4 at the appropriate time; and it is further

**ORDERED** that the Clerk of the Court shall terminate Plaintiff's renewed motion to seal [Dkt. No. 127] accordingly.

    s/ James B. Clark, III
**JAMES B. CLARK, III**
**United States Magistrate Judge**