UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **CDK GLOBAL, LLC, AS SUCCESSOR-INT-INTEREST TO ADP DEALER SERVICES, INC.**<br><br>**Plaintiff,**<br><br>v.<br><br>**TULLEY AUTOMOTIVE GROUP, INC. AND JOHN DOE CORPORATIONS,**<br><br>**Defendants.** | Civ. No. 15-3103 (KM)(JBC)<br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

Plaintiff CDK Global, LLC ("CDK") brings this motion for partial reconsideration of my September 25, 2020 opinion ("Op.") and order (DE 310; DE 311) which, among other things, denied CDK's motion for summary judgment against Defendant Tulley Automotive Group, Inc. ("Tulley")'s New Jersey Consumer Fraud Act claims. CDK claims that the aspect of my decision denying summary judgment should be reconsidered because of an intervening unpublished decision issued by the New Jersey Appellate Division, and because I, according to CDK, misstated facts in my prior opinion and did not properly apply choice-of-law rules to the NJCFA counterclaim.

For the reasons provided herein, I will deny plaintiffs' motion.

**I.    Summary**

I write primarily for the parties and assume familiarity with the facts and procedural history. I relay only the most salient facts for determination of this motion.

Tulley is an automobile dealership with locations in New Hampshire. (DE 310 at 1.) CDK sells, among other things, dealer management system ("DMS")

1

software, which car dealerships use to manage their daily operations. (*Id.*) CDK sold DMS products and associated services to Tulley. (*Id.*) CDK, claiming that Tulley breached the parties' contract by terminating the agreement early, brought four causes of action based on the parties' agreement. (*Id.*) Tulley responded with five counterclaims, including fraudulent inducement, recission, breach of contract, violation of the New Jersey Consumer Fraud Act, and unjust enrichment. (*Id.* at 1–2.)

My September 25, 2020 opinion evaluated the parties' cross-motions for summary judgment. The aspect of that decision relevant to this motion to reconsider is that I denied CDK's motion for summary judgment against Tulley's New Jersey Consumer Fraud Act claim. (*Id.* at 27–28.)

## II. Discussion

### a. Legal standard

In the District of New Jersey, motions for reconsideration are governed by Local Civil Rule 7.1(i). Reconsideration is an "extraordinary remedy," to be granted "sparingly." *NL Indus. Inc. v. Commercial Union Ins. Co.*, 935 F. Supp. 513, 516 (D.N.J. 1996). Generally, reconsideration is granted in three scenarios: (1) when there has been an intervening change in the law; (2) when new evidence has become available; or (3) when necessary to correct a clear error of law or to prevent manifest injustice. *See North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995); *Max's Seafood Café ex rel. Lou–Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (internal citation omitted); *see also Crisdon v. N.J. Dep't of Educ.*, 464 F. App'x 47, 49 (3d Cir. 2012) ("The purpose of a motion for reconsideration … is to correct manifest errors of law or fact or to present newly discovered evidence.") (internal citation omitted); *Carmichael v. Everson*, 2004 WL 1587894, at *1 (D.N.J. May 21, 2004). "The Court will grant a motion for reconsideration only where its prior decision has overlooked a factual or legal issue that may alter the disposition of the matter." *Andreyko v. Sunrise Sr. Living, Inc.*, 993 F. Supp. 2d 475, 478 (D.N.J. 2014).

### b. Application

CDK asserts that reconsideration is appropriate for the following reasons: (1) it asserts that *RDM Concrete & Masonry, LLC v. Surfside Casual Furniture*, 2020 WL 4459986 (App. Div. Aug. 4, 2020) is an intervening decision which invalidates my previous opinion; (2) it claims that I misstated certain factual matters in my previous opinion; and (3) it claims that I did not apply choice-of-law rules on an issue-by-issue basis, as required under the doctrine of depeçage. None of these reasons are valid bases for reconsideration.

#### 1. *RDM Concrete & Masonry, LLC v. Surfside Casual Furniture*

In *RDM*, the Appellate Division considered the defendant's appeal from a directed verdict against its NJCFA counterclaim. 2020 WL 4459986 at 3. The parties' dispute related to the construction of a furniture store. *Id.* at 1. The defendant hired the plaintiff as a concrete contractor, and part of the parties' agreement was that plaintiff would include wire mesh in concrete poured for the mezzanine level of the defendant's store. *Id.* at 1–2. The plaintiff never included wire mesh in the concrete, and the defendant refused to pay. *Id.* at 2. Plaintiff sued for breach of contract, and defendant brought a counterclaim for violation of the NJCFA. *Id.* at 1–2. The trial court issued a directed verdict in plaintiff's favor on the NJCFA claim after a jury trial;[1] the trial court concluded that the NJCFA was inapplicable to the transaction between the parties because it did not constitute "merchandise" under the NJCFA as interpreted by *All the Way Towing. Id.* at 4.

The Appellate Division first described the New Jersey Supreme Court's decision in *All the Way Towing, LLC v. Bucks Cty. Int'l Inc.*, 236 N.J. 431 (2019), in which the New Jersey Supreme Court set forth the circumstances in which "business-to-business transactions" can "fit within the CFA's definition of 'merchandise.'" 2020 WL 4459986 at *4 (quoting *All the Way Towing*, 236 N.J.

---

[1] The jury separately ruled in plaintiff's favor on its breach of contract claim. *Id.* at 1–2.

at 446). It explained that under *All the Way Towing*, whether business-to-business transactions constitute merchandise depends on the consideration of four factors:

> (1) The complexity of the transaction, taking into account any negotiation, bidding, or request for proposals process; (2) the identity and sophistication of the parties, which includes whether the parties received legal or expert assistance in the development or execution of the transactions; (3) the nature of the relationship between the parties and whether there was any relevant underlying understanding or prior transactions between the parties; and . . . (4) the public availability of the subject merchandise.

2020 WL 4459986 at *5 (quoting *All the Way Towing*, 236 N.J. at 447–48).

The court then applied *All the Way Towing* to the facts of the case. Beginning with the second factor, the sophistication of the parties, it noted that the defendant was a "sophisticated party that chose to engage in a sophisticated endeavor," reasoning that the defendant's president had served as its general contractor on the construction project, which involved the construction of a 17,500 square foot commercial building with a second story. *Id.* at 5. The court further noted that the president had previously been involved in the construction of furniture stores and had relied on the advice of professional experts, including a structural engineer, in planning the project at issue. *Id.*

The court then turned to the first factor, the complexity of the transaction, including negotiations between the parties. *Id.* at 6. It reasoned that although the parties had not engaged in a protracted and involved negotiation, the defendant did not merely accept the plaintiff's initial proposal, but instead considered three or four other contractors and extensively discussed the project with the plaintiff. *Id.*

As for the third factor, the "nature of the relationship between the parties," the court noted that the parties did not have any prior business

relationship, and noted that their relationship during the transaction was that of general contractor and sub-contractor. *Id.*

Lastly, as for the fourth factor, the "public availability of the subject merchandise," the court noted that *All the Way Towing* had phrased this requirement as being whether "any member of the public could purchase the product or service, if willing and able, regardless of whether such a purchase is popular." *Id.* (quoting *All the Way Towing*, 236 N.J. at 447). The *RDM* court, however, declined to follow that test, relying instead on the requirement that the good be sold to the "public at large," which the *All the Way Towing* court had rejected as the proper test. *Id.* at 7 (noting that the *All the Way Towing* Court "found that the fact that a product or service is not 'typically sold to the public at large does not mean [it is] not offered to the public for sale' under the CFA," 236 N.J. at 448). The *RDM* court concluded that "[c]onsidering, as we must, the nature of the transaction, the goods and services at issue are not those generally sold to the general public or the public at large," and thus found the fourth factor counseled against finding the products to be merchandise. *Id.*

CDK claims that *RDM* requires that I reconsider my previous opinion. I disagree for several reasons.

First, while *RDM* bears on the definition of "merchandise" under the NJCFA, my previous opinion properly considered *All the Way Towing*, which was the New Jersey Supreme Court's definitive explanation of how courts should interpret that term. (DE 310 30–33.) *RDM* does not overrule *All the Way Towing*, and could not, as it is a decision of a lower court. It at best merely "clarifies" existing law and is therefore not an intervening change in law which would be a proper basis for reconsideration. *N. Plainfield Bd. of Educ. v. Zurich Am. Ins. Co.*, 2011 WL 1044239 at *2–3 (D.N.J. Mar. 17, 2011) ("precedent, which . . . clarifies—rather than alters the existing legal regime—cannot qualify as an intervening change in the law."); *Leja v. Schmidt Mfg., Inc.*, 743 F. Supp.

5

2d 444, 458 (D.N.J. 2010); *Ivan v. Cnty. of Middlesex*, 612 F. Supp. 2d 546, 552 (D.N.J. 2009).

      CDK argues that I was required to consider *RDM* and follow its interpretation of the New Jersey Supreme Court's holding in *All the Way Towing.* (DE 313-1 at 3.) I surely have much to learn from my colleagues on the Appellate Division, and I find it useful to consider their decisions when interpreting New Jersey law. Nevertheless, "[t]his Court's 'role in diversity cases is to apply state law as announced by the state's highest court.'" *Mills v. Ethicon, Inc.*, 406 F. Supp. 3d 363, 376 (D.N.J. 2019) (quoting *LaBarre v. Bristol-Myers Squibb Co.*, 544 Fed. App'x 120, 124 n.7 (3d Cir. 2013)). While the court considers "decisions of the state's intermediate appellate courts for assistance in determining how the highest court would rule," those decisions are not binding. *McKenna v. Pacific Rail Serv.*, 32 F.3d 820, 825 (3d Cir. 1994). I find that the *RDM* holding is in some tension with the *All the Way Towing* Court's directive that the fact that a product or service is not "typically sold to 'public at large' does not mean [it is] not offered 'to the public for sale.'" 236 N.J. at 448. And of course it is the New Jersey Supreme Court's decision that binds me here. *See Earl v. NVR, Inc.*, \_\_\_ F.3d \_\_\_, 2021 WL 833990 at \*2 (3d Cir. 2021) ("The rulings of intermediate appellate courts must be accorded significant weight and should not be disregarded *absent a persuasive indication that the highest court would rule otherwise.*") (emphasis added) (quoting *U.S. Underwriters Ins. Co. v. Liberty Mut. Ins. Co.*, 80 F.3d 90, 93 (3d Cir. 1996)).

      I note also that *RDM* decision is not of precedential stature because it is an unpublished decision. New Jersey law is clear: unpublished decisions by the New Jersey Appellate Division have "no legal precedential value due to [their] unpublished nature." *Badiali v. New Jersey Mfrs. Ins. Grp.*, 220 N.J. 544, 559 (N.J. 2015). Indeed, New Jersey Court Rule 1:36-3 makes clear that "[n]o unpublished opinion shall constitute precedent or be binding upon any court" and "[n]o unpublished opinion shall be cited to any court by counsel unless the court and all other parties are served with a copy of the opinion and of all

contrary unpublished opinions known to counsel." Though New Jersey Court Rules are not binding on this Court, they authoritatively define the precedential weight that the state courts themselves give to unpublished decisions.

I do not disregard unpublished decisions, to the extent I find them helpful. Nor do other district courts. *See, e.g.*, *Ulysse v. Johnson*, 2020 U.S. Dist. LEXIS 228974 at *22–23 (D.N.J. Dec. 7, 2020) (citing unpublished Appellate Division opinions). I merely note that this opinion, which is contrary to New Jersey Supreme Court precedent and would not be regarded by any New Jersey court as binding precedent, is not a basis for reconsideration.[2]

Thus, regardless whether *RDM* conflicts with my previous opinion,[3] it does not merit reconsideration. I reject this ground for reconsideration.

### 2. Alleged Factual Misstatements in the Court's Opinion

CDK asserts that I made several mistakes of fact in identifying material factual disputes between the parties, including:

> (1) Crediting Tulley citation to CDK's 10-K and websites that CDK sells its DMS products to entities other than car dealerships; CDK claims those statements are hearsay, not from the relevant time period of when it sold Tulley the software services, and do not identify which of CDK's multiple business products are being referenced (DE 313-1 at 5–6);

---

[2] In any event, if CDK wished for the Court to consider *RDM*, it would have been the better practice to bring it to the court's attention as supplemental authority before the September 25, 2020 order was issued. *RDM* was decided on August 4, 2020, well before I issued my decision. *Physicians Healthsource, Inc. v. Janssen Pharm., Inc.*, 2015 WL 5164821 at *4 (D.N.J. Sept. 2, 2015) ("*Sandusky* does not constitute an intervening opinion, as it was issued on June 3, before this Court's June 19, 2015 opinion."). I do recognize, however, that the opinion was issued after briefing was complete.

[3] It is far from clear that it does. As Tulley notes in its opposition, *RDM* is easily distinguishable. The circumstances of the parties' negotiations and their relative expertise were different. The dispute had to do with the inclusion, or not, of wire mesh in concrete—not reliance on the other party's expertise in designing a sophisticated computer system. And so on. (DE 320 at 7–9.) Here, the issue is whether the multifactor, fact-bound test of *All the Way* presents a factual issue requiring trial, a different proposition.

> (2) Concluding that the parties negotiated only from April 2013 to June 2013 when in fact, according to CDK, the parties negotiated from late 2011 to June 2013; (DE 313-1 at 7–8).[4]

CDK's 10-K states that it serves original equipment manufacturers, lenders, aftermarket providers, and other services and information providers in the automotive retail industry, as well as manufacturers of heavy trucks, construction equipment, and agricultural equipment. (DE 277-23 (Ex. WWW) at 6 (2015 10-K); DE 277-24 (Ex. XXX) at 5 (2019 10-K).) CDK's website also states that it serves heavy truck, agriculture, construction, powersports, marine and RV dealerships throughout the world. (DE 277-25 (Ex. YYY.)) As Tulley notes, two CDK employees testified in their depositions that there are a number of entities which use CDK's DMS system, such as repair businesses, parts supply businesses, and manufacturing businesses. (DE 277-26 (Ex. ZZZ); *see also* DE 277-27 (Ex. AAAA.)) CDK may ultimately disagree with these statements or even prove them false at trial. For the purposes of summary judgment, however, I adhere to my prior determination that they suffice to create, or contribute to the creation of, a material dispute of fact.

Second, CDK asserts that I ignored facts indicating that the parties had been negotiating their agreement for two years. CDK points to discussions between the parties which initiated as early as 2011, though they admit that those earlier discussions were abortive. (DE 313-1 at 8 ("The parties' 2012 negotiations ended on May 25, 2012, with Tulley walking away, unable to agree on terms. The process resumed the following year, on April 10, 2013.").)

I did, in fact, note the existence of these prior discussions in the facts section of my September 25, 2020 opinion. (DE 310 at 4.) I did not, however, consider those discussions to be a part of the "negotiations" between the parties, in light of the fact that they occurred a year before the resumed

---

[4] CDK also asserts other "factual errors" in my previous opinion, but fails to raise any actual issues of fact which elevate such claims above merely registering disagreement with my reasoning. (*See, e.g.*, DE 313-1 at 9–11 (attempting to relitigate the sophistication and relationship factors of *All the Way Towing*).)

negotiations which led to the actual agreement between the parties. (DE 320 at 10.) CDK does not provide any new facts which indicate that those prior discussions should have been regarded as a part of the parties' later negotiations, and does not cite any legal support for that proposition. I thus conclude CDK has not provided a valid basis for reconsideration.

### 3. Whether the September 25, 2020 Opinion Properly Evaluated Choice-of-Law as to the NJCFA Claim

CDK asserts that I overlooked the principle of depecage, which directs that "different states' laws may apply to different issues in a single case." *Bacon v. Avis Budget Grp., Inc.*, 357 F. Supp. 3d 401, 429–30 (D.N.J. 2018). They claim that I should have applied Restatement (Second) of Conflicts of Laws § 187(b) separately to the NJCFA claim, and that if I had, I would have found NJCFA conflicts with New Hampshire's Consumer Protection Act and that New Hampshire has a materially greater interest in consumer fraud suffered by Tulley.

Section III.b of my September 25, 2020 opinion dealt with Tulley's fraudulent inducement counterclaim. Before proceeding to the substance, I performed a conflict-of-laws analysis under Restatement § 187(b). (DE 310 at 28.) The parties' agreement included a provision which stated that the agreement "shall be governed in all respects by the laws of the State of New Jersey." (*Id.* at 16.) Citing appropriate law, I held that this clause was not narrowly confined to claims of breach of contract, but was broad enough to encompass related non-contractual claims. Under Restatement § 187(b), such a provision controls unless the chosen state "has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice" or "application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue." (*Id.* at 17.) I concluded the first exception did not apply because CDK is authorized to conduct business activities in this state and does so, and because there was considerable evidence in support of the conclusion that New Jersey was CDK's

principal place of business. (*Id.* at 20.) I concluded the second exception did not apply because protecting New Hampshire residents from fraud does not violate New Hampshire's public policy. (*Id.* at 21.) Not for nothing, the clause was drafted by CDK itself to ensure the application of New Jersey law, and CDK had sued here in New Jersey in reliance on the choice-of-venue provision in the same paragraph of the agreement.

Now, CDK asserts that I failed to apply conflicts of laws principles separately to the NJCFA, which, it says, does not apply to out-of-state residents' claims.[5] If the argument is that I applied conflict of laws principles to fraudulent inducement, and then simply assumed that New Jersey law applied in the NJCFA context as well, I fail to see it.

Section III.c of the Opinion (immediately following III.b, of course), dealt with Tulley's NJCFA counterclaim. As in the preceding section, I began with the conflict of laws issue, because CDK was arguing that the NJCFA could not be applied to the claim of an out-of-state party. I explicitly incorporated the Restatement § 187 discussion by reference; I specifically found, in the context of NJCFA, that this was not a case in which New Jersey lacked a substantial relationship to the parties or the transaction, or in which there was not a reasonable basis for the parties' choice—CDK's choice, actually—of New Jersey law; I then distinguished *Maniscalco v. Brother Int'l (USA) Corp.*, 709 F.3d 202,

---

[5] CDK phrases this claim in terms of the principle of depeçage. *See, e.g., Allegheny Plant Servs., Inc. v. Carolina Cas. Ins. Co.*, No. CV 14-4265 (KM), 2016 WL 1070671, at *7 (D.N.J. Mar. 17, 2016) (McNulty, J.); *Bacon v. Avis Budget Grp., Inc.*, 357 F. Supp. 3d 401, 416 (D.N.J. 2018) (McNulty, J.), *aff'd*, 959 F.3d 590 (3d Cir. 2020). This does not strike me as a typical depeçage issue, because CDK's gripe does not really seem to be that I failed to mix and match states' laws issue-by-issue. *See* Depecage, Black's Law Dictionary (11th ed. 2019) ("A court's application of different state laws to different issues in a legal dispute; choice of law on an issue-by-issue basis."); *Berg Chilling Systems, Inc. v. Hull Corp.*, 435 F.3d 455, 462 (3d Cir. 2006) ("Because choice of law analysis is issue-specific, different states' laws may apply to different issues in a single case, a principle known as 'depecage.'") (citing *Compagnie des Bauxites v. Argonaut-Midwest Ins. Co.*, 880 F.2d 685, 691 (3d Cir. 1989)). CDK rests on the far more obvious proposition that one state's law might apply to one claim of a complaint, while another state's law might apply to another claim. So there is no need to quibble, whether in French or English, over terminology.

204 (3d Cir. 2013), the main conflicts case on which CDK relied; and I found, as I had with respect to fraudulent inducement, that the contractual choice of law provision was broad enough to cover a NJCFA claim.[6]

CDK now argues that I should not have applied the NJCFA because it imposes a lower standard of proof than New Hampshire's Consumer Protection Act. As it happens, NJCFA does not require intent or reliance, but the New Hampshire statute requires "a level of rascality that would raise an eyebrow of someone inured to the rough and tumble world of commerce." *Fat Bullies Farm, LLC v. Devenport*, 164 A.3d 990, 995 (N.H. 2017). Thus, it is true that the New Hampshire Consumer Protection Act *conflicts* with the NJCFA, in the sense that the two laws are not the same and impose different levels of proof. *Beegal v. Park West Gallery*, 394 N.J. Super. 98, 125 (App. Div. 2007).

---

[6] Here is the discussion from Section III.c of the prior Opinion, in full:

> At the outset, CDK argues that the NJCFA cannot apply to the claim of an out-of-state consumer, such as Tulley, which is based in New Hampshire. This argument is related to the earlier issue concerning the contractual choice-of-law provision and the fraudulent inducement claim. I therefore incorporate the analysis from Section III.b.i, *supra*. This is not a case in which New Jersey has "no substantial relationship to the parties or the transaction" and "there is no other reasonable basis for the parties' choice." Rest. § 187.
>
> CDK cites *Maniscalco v. Brother Int'l (USA) Corp.*, in which the Third Circuit held that the NJCFA did not apply to the plaintiff/appellant's consumer fraud claim because his home state of South Carolina had the most significant relationship to the case, notwithstanding that the defendant corporation was headquartered in New Jersey. 709 F.3d 202, 204 (3d Cir. 2013). *Maniscalco* is distinguishable from this case, however, because there was no contractual choice of law clause, so the choice-of-law analysis relied solely on the most-significant-relationship test.
>
> Here, as discussed above, the MSA does contain a New Jersey choice-of-law provision. That choice-of-law provision was drafted by CDK (or rather its predecessor, ADPDS) in its own interest. True, the clause might not be broad enough to cover a NJCFA claim arising incidentally from the parties' ongoing relationship. Tulley emphasizes, however, that its NJCFA claim is aimed more narrowly at the validity and enforceability of the MSA—implying that it is essentially the fraudulent inducement claim in statutory guise. For the reasons stated above, then, I hold that the choice-of-law provision is broad enough to require application of the NJCFA. *See* Section III.b.i, *supra*.

(Sept. 25, 2020 Op. at 28)

11

Such considerations will not overcome the parties' contractual choice of law unless there is a conflict with some fundamental policy of the other state. Restatement (Second) of Conflicts of Laws § 187(b). There is no such conflict with any fundamental policy of New Hampshire. CDK cites no support for the proposition that New Hampshire would object to its citizens receiving greater, as opposed to less, protection than it affords under its own law. *Cf. MacDonald v. CashCall, Inc.*, 2017 WL 1536427 at *8–9 (D.N.J. Apr. 28, 2017) (rate of interest not only conflicted with New Jersey law, but instead contravened fundamental policy of New Jersey because it violated New Jersey's Retail Installment Sales Act as usurious). In the absence of any indication that New Hampshire would prohibit the application of the NJCFA, as opposed to simply that New Hampshire law has a different standard of proof than the NJCFA, I see no basis for reconsideration.

CDK cites a number of cases, (DE 313-1 at 12 n.11) which are distinguishable for the same reason that I distinguished *Maniscalso* in my prior Opinion. *See, e.g.*, *Oliver v. Funai Corp., Inc.*, 2015 WL 3938633 (D.N.J. June 25, 2015) (no choice of law provision in contract); *Knox v. Samsung Electronics America, Inc.*, 2009 WL 1810728 (D.N.J. June 25, 2009) (same).[7] Where there is no contractual choice of law, as I acknowledged in my prior Opinion, a more general choice-of-law balancing of contacts and interests might point away from the application of New Jersey law. (*See* Op. 21 ("Concededly, were it not

---

[7] True, CDK cites *Lupian v. Joseph Cory Holdings, LLC*, in which there was a choice of law provision in the parties' contract. 240 F. Supp. 3d 309 (D.N.J. 2017). That case, however, concerned the application of the New Jersey Wage Payment Law ("NJWPL"), not the NJCFA. *Id.* While the *Lupian* court involved a choice-of-law issue, it concluded that the NJWPL "does not apply to employees based outside of New Jersey" because the law had no extraterritorial effect. *Id.* at 313–14 (quoting *Overton v. Sanofi-Aventis U.S., LLC*, 2014 WL 5410653 at *5–6 (D.N.J. Oct. 23, 2014)). Thus, *Lupian* is as much explained by substantive limitations on the extraterritorial effect of the NJWPL (which are not applicable to the NJCFA) as it is by any particular conclusions regarding choice-of-law principles. Additionally, and most importantly, the *Lupian* court also found that Illinois preferred that its own wage law apply to work which occurred within the state, *Id.* at 313 (citing *Glass v. Kemper Corp.*, 133 F.3d 999, 1000 (7th Cir. 1998)), while, as noted above, there is no indication that New Hampshire would reject the application of the NJCFA to its residents.

12

for the contractual choice-of-law clause drafted by CDK/ADPDS, the most-significant-relationship analysis might or might not suffice to require application of New Jersey law.")) But that is not the test under § 187.

### III.   Conclusion

For the reasons set forth above, I will deny plaintiffs' motion (DE 313-1) for reconsideration. An appropriate order follows.

Dated: March 29, 2021

/s/ Kevin McNulty

_____

**Kevin McNulty**
**United States District Judge**