NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CDK GLOBAL, LLC, as successor-in-interest to ADP DEALER SERVICES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>TULLEY AUTOMOTIVE GROUP, INC., AND JOHN DOE CORPORATIONS 1-5,<br><br>Defendants. | Civil Action No. 15-3103 (SDW) (JBC)<br><br>**OPINION**<br><br>March 18, 2025 |

**WIGENTON**, District Judge.

Before this Court is Defendant Tulley Automotive Group, Inc.'s ("Defendant" or "Tulley") Motion to Amend Judgment (D.E. 421 ("Motion")) pursuant to Federal Rules of Civil Procedure ("Rules") 52(b) and 59. This opinion is issued without oral argument pursuant to Rule 78 and Local Civil Rule 78.1. For the reasons stated herein, Defendant's Motion is **DENIED.**

I.   FACTUAL AND PROCEDURAL BACKGROUND

The Court refers to its prior opinion (D.E. 419 ("Trial Op.")) for a fuller recitation of the factual background. The underlying factual background involves a Master Services Agreement ("MSA"), a contract under which Tulley agreed to lease Drive, a dealer management system

1

("DMS") software, from Plaintiff CDK Global, LLC ("Plaintiff" or "CDK")[1] in exchange for CDK installing Drive and providing support services.  (Trial Op. at 3–4.)

On May 1, 2015, CDK filed the instant lawsuit asserting claims for breach of contract, contractual attorneys' fees, replevin, and conversion.  (D.E. 1.)  In response, Tulley brought the following counterclaims against CDK:  breach of contract, fraudulent inducement, rescission, violation of the New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. § 56:8-1, *et. seq.*, and unjust enrichment.  (D.E. 16, 22.)  After extensive motion practice, Judge McNulty denied Tulley's Motion for Summary ("MSJ") and granted CDK's MSJ as to Tulley's fraudulent inducement claim as well as CDK's Motion to voluntarily dismiss its replevin and conversion claims.  (D.E. 310–11.)

On November 29, 2023, this case was reassigned to this Court.  (D.E. 364.)  This Court held a bench trial from June 3, 2024 to June 7, 2024.  (D.E. 400, 402–05.)  Thereafter, this Court issued a Trial Opinion summarizing the procedural history of this case and making findings of fact and conclusions of law.  This Court concluded CDK did not prove by a preponderance of the evidence that Tulley breached the MSA when Tulley:  (i) switched to its old DMS software while continuing to pay for Drive, (ii) disconnected GM RIM from its DMS system, and (iii) authorized its attorney to send a notice of rescission of the MSA on September 10, 2014.  (Trial Op. at 7–11.)  As to Tulley's counterclaims, this Court found CDK was not liable for breach of contract or violating the NJCFA.  (*Id.* at 11–17.)

Defendant timely filed the instant Motion requesting that this Court amend its Trial Opinion "to hold that Tulley proved its NJCFA counterclaim" and amend the Judgment to grant

---

[1] CDK Global, LLC is ADP Dealer Services, Inc.'s ("ADP") successor-in-interest.  Hereinafter, any references to CDK will be deemed to include the predecessor ADP entity.

2

Tulley damages, interest, and reasonable attorneys' fees.  (D.E. 421-1 ("Mov. Br.")).  The parties timely completed briefing.  (D.E. 421, 424, 425.)

## II. LEGAL STANDARD

A motion to alter or amend judgment under Federal Rule of Civil Procedure 59(e) must rely on at least one of the following three grounds:  "(1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice."  *Wiest v. Lynch*, 710 F.3d 121, 128 (3d Cir. 2013) (quoting *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010)).  Parties may not use a motion to alter or amend judgment to "relitigate old matters" or present previously available arguments or evidence; such disagreement should be handled through the appellate process.  *See Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) (citation omitted); *Florham Park Chevron, Inc. v. Chevron U.S.A., Inc.*, 680 F. Supp. 159, 162 (D.N.J. 1988).  Relief under Rule 59(e) is an "extraordinary remedy" to be granted "sparingly."  *CPS MedManagement LLC v. Bergen Reg'l Med. Ctr. L.P.*, 940 F. Supp. 2d 141, 168 (D.N.J. 2013) (citing *NL Indus., Inc. v. Com. Union Ins. Co.*, 935 F. Supp. 513, 516 (D.N.J. 1996)).

Under the third prong, the movant must show that "'dispositive factual matters or controlling decisions of law' were brought to the court's attention but not considered."  *P. Schoenfeld Asset Mgmt. LLC v. Cendant Corp.*, 161 F. Supp. 2d 349, 353 (D.N.J. 2001) (quoting *Pelham v. United States*, 661 F. Supp. 1063, 1065 (D.N.J. 1987)).  However, that a court failed to explicitly mention an issue, on its own, is not indicative that the court overlooked said issue.  *See In re 40 Lakeview Drive, LLC*, No. 17-5730, 2018 WL 646080, at *1 (D.N.J. Jan. 31, 2018).

## III. DISCUSSION

Defendant claims this Court failed to address "critical pre-MSA misrepresentations made by CDK" when analyzing whether CDK engaged in unlawful conduct violative of the NJCFA.

3

(Mov. Br. at 3.) More specifically, Defendant argues Jeff Evans, a CDK sales representative, misrepresented the Drive system's capability to handle Tulley's payroll and multi-franchise needs and to transfer customer information from the prior DMS. (*See generally* Mov. Br.) This Court previously considered Mr. Evans's statements and found they consisted of "subjective generalities about the future" that amounted to puffery. (*See* Trial Op. at 16–17.) Notwithstanding this Court's prior consideration of these statements and Defendant's failure to articulate why this Court should revisit its Trial Opinion pursuant to Rule 59's standard and relevant caselaw, this Court will address Defendant's arguments and clarify its prior opinion.

A party must prove the following elements to prevail on a violation of the NJCFA claim: (1) an unlawful practice, (2) an ascertainable loss, and (3) a causal relationship between the two. *Frederico v. Home Depot*, 507 F.3d 188, 202 (3d Cir. 2007); *Robey v. SPARC Grp. LLC*, 311 A.3d 463, 471 (N.J. 2024). Unlawful conduct encompassed by the statute falls into three general categories: "affirmative acts, knowing omissions, and regulation violations." *Frederico*, 507 F.3d at 202 (quoting *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 462 (N.J. 1994)). "An affirmative representation is 'one which is material to the transaction and which is a statement of fact, found to be false, made to induce the buyer to make the purchase.'" *Mladenov v. Wegmans Food Markets, Inc.*, 124 F. Supp. 3d 360, 373 (D.N.J. 2015) (quoting *Mango v. Pierce-Coombs*, 851 A.2d 62, 69 (N.J. Super. Ct. App. Div. 2004)).

Under the NJCFA, misrepresentations of fact are actionable but mere puffery is not. *LS-NJ Port Imperial LLC v. A.O. Smith Water Prods. Co.*, No. 22-1687, 2022 WL 17547269, at *6 (D.N.J. Dec. 8, 2022); *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 945 (3d Cir. 1993). Puffery is characterized by exaggerated, broad, vague, and commendatory language, as opposed to specific and detailed factual assertions. *Castrol*, 987 F.2d at 945; *Lieberson v. Johnson & Johnson*

4

*Consumer Cos.*, 865 F. Supp. 2d 529, 540 (D.N.J. 2011). Similarly, "[s]tatements as to future expectations or probabilities, or as to what will or will not be done in the future, do not constitute misrepresentations even though they may turn out to be wrong." *Bubbles N' Bows, LLC v. Fey Publ'g Co.*, No. 06-5391, 2007 WL 2406980, at *9 (D.N.J. Aug. 20, 2007) (citing *Alexander v. CIGNA Corp.*, 991 F. Supp. 427, 435 (D.N.J. 1998)). Key to determining whether a statement is fact or puffery is the context in which the claim is made. *EP Henry Corp. v. Cambridge Pavers, Inc.*, 383 F. Supp. 3d 343, 349 (D.N.J. 2019).

Contrary to Defendant's assertion that this Court's Trial Opinion relied solely on the alleged misrepresentations addressed by Judge McNulty in his MSJ opinion, this Court addressed specific statements and extensively cited the trial transcript. (*See* Trial Op. at 16–17 (citing the trial testimony of Brian and Mark Tulley and John Murphy)). Even if this Court did not explicitly mention certain statements, all the evidence in the record was considered. *See Morton v. Fauver*, No. 97-5127, 2011 WL 2975532, at *3 (D.N.J. July 21, 2011) (citation omitted) ("The fact that an issue was not explicitly mentioned by the court does not on its own entail that the court overlooked the matter in its initial consideration."). In its Motion, Defendant highlights evidence pertinent to *post facto* issues with the Drive system related to payroll, multiple logons, and data transfer, but fails to point to any testimony or evidence elicited at trial supporting Defendant's claim that Mr. Evans made *specific* statements about each of these areas.

This Court reiterates that the alleged misrepresentations consisted of general, broad statements addressing the Drive system's capabilities should the Tulleys have elected to move forward and establish a business relationship with Plaintiff—thereby amounting to puffery. *See Castrol*, 987 F.2d at 945; *Bubbles N' Bows*, 2007 WL 2406980, at *9; *see also Wilkins v. Navy Fed. Credit Union*, No. 22-2916, 2023 WL 239976, at *16 (D.N.J. Jan. 18, 2023) (finding the

5

defendant's marketing of Zelle as "safe" and secure" was non-actionable under the NJCFA, reasoning that courts within this district routinely find statements concerning safety, durability, and reliability to be mere puffery); *In re Toshiba Am. HD DVD Mktg. & Sales Price Litig.*, No. 08-939, 2009 WL 2940081, at *10 (D.N.J. Sept. 11, 2009) (finding statements that "HD DVD offers the best of high definition television and DVD and that HD DVD are 'For Today, Tomorrow and Beyond'" were mere puffery given their general, vague, and exaggerated nature). This Court also notes these statements were made following the failed 2012 negotiations and during the 2013 negotiations, which is relevant context. *See EP Henry Corp.*, 383 F. Supp. 3d at 349. The bulk of the alleged misrepresentations occurred in or about May 2013 in meetings that took place when Mr. Evans visited Defendant's store. (*See* B. Tulley, D.E. 410 ("T3"), 477:11–479:6.)[2] *See Muller v. Builders*, No. A-554-18T1, 2020 WL 2130907, at *1, 5 (N.J. Super. Ct. App. Div. May 5, 2020) (concluding defendant Sands's sales pitch in which he stated his company had been in business for many years and had a terrific reputation, observed the work to be performed, and discussed financing did not amount to unlawful conduct under the NJCFA because the defendant's statements were "mere puffery").

For example, according to Brian Tulley, Mr. Evans stated Drive would "be able to handle [the] multi-franchise dealership [and] . . . [the] payroll system," "be able to plug in additional services like FirstLook" and Dealersocket, help Defendants "run [their] business" and "for growth with [the] business," and "pull all . . . customer information" from the old DMS to Drive "accurately and easily." (B. Tulley, T3, 477:18–478:9, 491:23–492:1.) Additionally, Brian Tulley testified that after seeing the facility and its enormity, Mr. Evans "assured [them] that ADP, [a] market leader, would be able to handle all of our functions and then some." (B. Tulley, T3, 487:20-

---

[2] "T3" refers to the trial transcript dated June 5, 2024.

–24.) *Cf. Campmor, Inc. v. Brulant, LLC*, No., 2011 WL 2745922, at *9–10 (D.N.J. July 12, 2011) (alteration in original) (finding the defendant's, which claimed it was the "premier WebSphere Commerce partner in the United States," predictions that upgrading to the 6.0 version of the e-commerce platform would cost $757,700 and that the "return on investment was 'estimated to [be] cash flow positive in August of 2008 and result in additional profits of $2.2 million by the end of 2009'" were not representations of fact, but mere predictions and estimates). Because Mr. Evans's statements constituted mere puffery, those statements are non-actionable under the NJCFA. The testimony and evidence at trial did not conclude that Mr. Evans made specific misrepresentations about CDK's product and its capabilities. This Court thereby affirms its finding that Plaintiff did not violate the NJCFA.[3]

## IV. CONCLUSION

For the reasons stated above, Defendant's Motion is **DENIED.**

                                                 /s/ Susan D. Wigenton
                                    **SUSAN D. WIGENTON, U.S.D.J.**

Orig:  Clerk
cc:     Parties
        James B. Clark, U.S.M.J.

---

[3] Having concluded that Plaintiff did not violate the NJCFA, this Court need not address whether Defendant suffered a compensable ascertainable loss. *See Montich v. Miele USA, Inc.*, 849 F. Supp. 2d 439, 451 n.7 (D.N.J. 2012) (declining to address ascertainable loss where the court dismissed the plaintiff's NJCFA action); *Robinson v. Maintech Inc.*, No. 23-4458, 2024 WL 1598416, at *5 n.2 (D.N.J. Apr. 12, 2024) (same).